The next case is the Alabama State Conference of the National Association for the Advancement of Colored People v. the State of Alabama, and the Secretary of State for the State of Alabama, Mr. LaCour, is here for the appellants. Mr. Harrison for the appellees. Mr. LaCour, you may begin when you're ready. Thank you, Judge Wilson, and may it please the Court, Edmund LaCour on behalf of the State of Alabama. The Supreme Court has repeatedly held that poor courts can find abrogation of state sovereign immunity. There must be textual and unequivocal evidence of Congress's intent to abrogate. Under the stringent standard, a general authorization to sue is simply not enough. Rather, the text must be both specific and unmistakable. And because the VRA lacks such specific and unequivocal text, it does not abrogate sovereign immunity, and the District Court's decision should be reversed. Now, before delving further into the merits, I do want to address this Court's decision in Lewis from about four months ago. As the parties recounted in our pleadings last week, Lewis did decide this Section 2 abrogation question. Three and a half months ago, the State of Alabama filed a petition for rehearing en banc. If that petition is granted, then the Lewis panel decision will be vacated, and then it will fall to either the en banc court or to this panel to consider the abrogation question anew. Therefore, we would submit that it would be a good use of the Court's time today to hear argument as if Lewis is going to be vacated. That way, if Lewis is indeed vacated, the Court will have the benefit of argument today fully fleshing out this issue. Now, we would respectfully submit that Lewis's abrogation holding does conflict with clear Supreme Court precedent. Lewis relied entirely on two facets of the VRA. First of all — You have only taken this appeal from a very limited issue before Judge Watkins as an interlocutory appeal. You're basically accepting the rest of that decision. Is that where we are? I wouldn't say necessarily that we're accepting it, Your Honor. We have a right as a sovereign to bring this up on interlocutor — bring this specific issue up on interlocutory appeal. There are other issues, depending on how Judge Watkins rules, that may be in front of this Court sometime next year or the year after, depending on whenever that decision is made final in his Court. But the only issue currently before this Court is the sovereign immunity issue. We think Judge Watkins erred when he decided that the VRA does abrogate state sovereign immunity. He primarily based his ruling on the notion that the VRA would be, quote, toothless if it were not — And, quite frankly, Your Honors, we don't think that wholly makes any sense. The VRA, even if private parties cannot sue states directly, private parties would still be free under the VRA's implied right of action or under Section 1983 to bring suits against state officials, against local officials, and against local governments. Moreover, if you look to Section 12 of the VRA, we think this is very simple. Multiple powers to bring litigation that would enforce the VRA. First, the Attorney General could bring criminal actions against individuals who impinge on rights that are guaranteed by the VRA. Second, even more to the point for this particular case, the Attorney General is given explicit authority to sue the states in federal court in a civil action. Now, that's important for such a restriction on state action would be toothless without the right to sue for a remedy. But then, in the next sentence, he says, in the right of private litigants to bring such an action under Section 2, quote, has been clearly intended by Congress since 1965, quoting Morse v. the Republican Party decided by the Supreme Court in 1996. So, I guess Alabama is sort of kind of asking this court to set aside several decades of pretty clear precedent that Congress intended to abrogate sovereign immunity in Section 2. I think it's important not to conflate two separate issues. One, the issue of whether Congress intended to provide a private right of action, and the very separate question of whether Congress intended to abrogate the right of action test. And the implied right of action test is much easier to satisfy. Indeed, they look at two very different things. So, if you're looking for an implied right of action, by necessity, you're having to read between the lines, because the text itself doesn't confer the right of action. Now, if you're looking at abrogation of sovereign immunity, what the Court has said is you have to look at the text. And if there's nothing in the text that makes it unmistakably clear — A grieved person. How do — are you writing out the words, a grieved person? No, Your Honor. There are multiple statutes that Congress has passed where there is some sort of duty imposed on the state, and there is some sort of general right of action that has been conferred on private parties, where the Court has still held, where the Supreme Court has still held, that that alone is not sufficient to provide, quote, the perfect confidence, close quote, and that's from Delmuth v. Muth, the 1989 decision from the Supreme Court, quote, perfect confidence that Congress intended to abrogate sovereign immunity. So, for example, in Section 1983, that clearly provides parties, private parties, the ability to vindicate their constitutional rights, but it doesn't abrogate sovereign immunity. They can still sue state officials, yes, local officials, local governments, but not the states directly. Now, I'd like to return to Delmuth, because I do think it controls here. Delmuth was a case, and we said repeatedly in our briefs, and that appellees do not address even once in their response brief, and I don't think they have an answer for it. So, Delmuth, like the VRA, dealt with a statute that imposed substantial obligations on the states. That was the EHA, that's Education of the Handicapped Act. As the Court said, the EHA is replete with references to the states. It requires states directly to provide certain funding, to educate handicapped children, and also to provide certain services to handicapped children. Moreover, it has an attorney's fees provision that expressly references the states, and then it has this general authorization for private parties to sue in federal court. Now, despite putting obligations on the states, and despite there being a general authorization to sue, the Court held that was not enough to abrogate. You need specific textual language, and that simply wasn't enough. Now, wasn't the statute at issue in Delmuth later amended to include a non-retroactive express abrogation clause? Yes, Your Honor, we think that supports us, not harms us, because it shows, one, that Congress knew how to do this, and second, as the Court said in Delmuth, there was a permissible inference in reading the states to be defendants in private party litigation. But a permissible inference isn't enough. Your Honor, you don't have to even think that we have the best reading of the VRA. You just have to conclude that we have a plausible reading. And I don't think that they've been able to negate that. Again, as Delmuth said, perfect confidence is required before courts can go and extend their authority over a separate sovereign and hail them into court to face litigation from private parties. Well, you're ignoring the Supreme Court's later opinion, or the Supreme Court's opinion in the Seminole Tribe case. I don't see how Seminole Tribe helps them or harms us at all, Your Honor. I think it is our case and not theirs, and for the simple reason, if you look at the statute at issue in Seminole Tribe, the Indian Gaming Regulatory Act, that was designed to force states to negotiate with Indian tribes over casino gambling. And if you look at the actual text, and this is what the court did in Seminole Tribe, there are multiple references, litigation-specific references to the states. It says that states bear a burden of proof. It also mentions that the states have, there are additional, again, litigation-specific references to the states in addition to mentioning that burden of proof. It provides that federal courts can actually order the states to take certain actions. So there's no plausible reading of the Indian Gaming Regulatory Act other than to clue that when federal courts have the ability to order states to do something, well then, clearly states can be sued by the Indian tribes under the act. But that's not the case in the VRA. As we point out, the VRA can still accomplish its work if private parties are allowed to sue state officials, local governments, local government officials, and if the Attorney General, as I was pointing out before, Section 12 shows, the Attorney General can still bring these direct actions against the states in federal court. And that's important not just to show that the VRA can still function, but it's important as evidence of Congress's intent. Because what this shows is the Congress that passed the VRA knew how to give specific textual authorization to a party to sue states in federal court. They did that for the Attorney General. They did not do that for private parties. That is strong textual evidence that states have that sort of power. So, am I clear that if we say that Congress did not abrogate state sovereign immunity when it enacted Section 2 of the Voting Rights Act, we would be the first circuit to, we'd be the only circuit to say that, wouldn't we? You would, yes. Two circuits have addressed this question in addition to the 11th Circuit in Lewis. That was the Nixon decision from the Sixth Circuit, OCA Houston from the Fifth Circuit. Look at Nixon, though. Its analysis of the text is two sentences long. It never addresses Delmuth. It never addresses Atascadero and these other decisions that we believe are controlling here. OCA Houston, the analysis is even more paltry. All it does is cite Nixon. It never engages with the text like the Supreme Court does in any one of these decisions that  Maybe the reason is because it's so clear. Your Honor, I'd point you back to Delmuth where you have the EHA, which has even clear indicia, textual indicia of abrogation in the EHA. The attorney's fees provision even references the states, and the Supreme Court held that that wasn't enough. And if that wasn't enough in the EHA, then there's no way that the VRA can be read consistent with Supreme Court precedent to abrogate state sovereign immunity. If we do find sovereign immunity, what happens to this lawsuit? If you find that we are immuno-sovereign? I assume it will still proceed because you also have the Secretary of State has also That's absolutely right, Your Honor. The plaintiffs can still seek relief from the Secretary of State, which also suggests that they knew the proper defendant in this case was the Secretary of State. He's the chief elections officer in this case. That also addresses another point, Your Honor. There are serious practical effects that follow when the state is wrongfully named as a defendant. It can alter the course of litigation. It hasn't in this case, but it does affect which lawyers are involved. It affects who receives service and notice. So it would have made no sense for the plaintiffs to sue only the State of Alabama. Then the Secretary of State might not have even known of the litigation. Finally, the State is a large entity. Some plaintiffs have used that fact to serve abusive discovery requests on far-flung arms and agencies of the state that have little or nothing to do with the litigation. Conversely, when the proper state party is named as the defendant, litigation is more likely to focus on relevant issues and proceed efficiently for all these reasons. We think that sovereign immunity should be asserted here. Thank you, Mr. LaCour. We'll hear from Mr. Harrison. Thank you, Your Honor, and good morning. My name is Keith Harrison. I represent the State of Alabama. Your Honor, in this case, we have sued multiple parties, including the State of Alabama. Not only there are a number of reasons, a number of circumstances in which the State may take the position or the Secretary of State may take the position that he or she may not be in a position to provide the full relief that is required by the district court should the district court issue a remedy in this case. The Secretary of State may or may not be the appropriate party to fully implement a redistricting effort that may occur as a result of the district court's decision. So we do not know exactly. The district court has wide latitude in terms of the remedy that it may impose or not impose, and the Secretary of State may not be the appropriate party to implement that remedy. And therefore, we determined that it was important to sue the State. Not only does the Voting Rights Act give us that right to do so, but it may be critically important in terms of actually implementing the authority of the Voting Rights Act. With respect to this issue, is there anything different in this case from the Lewis case? No, Your Honor. With respect to this issue, the issue is exactly the same. The defendant is even exactly the same. And the results we submit should be exactly the same. And that's the same, that is the same conclusion that the district court reached when it analyzed the State's motion to dismiss based on sovereign immunity. And the district court properly held that Congress was unequivocal, unequivocal in its intent to abrogate the State's, all State's, sovereign immunity when it enacted the Voting Rights Act, and it did so pursuant to a valid exercise of congressional power. Chief Judge Watkins, in his motion to dismiss, conducted an exhaustive analysis of the case law, examined the statutory language and the historical context of the Voting Rights Act, and concluded that it is, and I'm quoting, it is difficult to conceive of any reasonable interpretation of Section 2 that does not involve abrogation of State's, of the State's immunity. And that was prior to this court in Lewis reaching the exact same conclusion. And in the Lewis case, the court again was considering whether, the sovereign immunity issue with regard to circuit in holding that indeed Congress validly abrogated State's sovereign immunity. There are two questions in every sovereign immunity analysis of this type. The first is whether there's evidence of unequivocal intent, and the second is whether it's a valid exercise of power. The district court properly ruled that there was unequivocal intent and a valid exercise of power. The Lewis court followed with that same analysis. In fact, the Lewis court agreed with the Sixth Circuit in Nixon when it said that it's unmistakably clear in the language of the statute that Congress intended Section 2 to be enforced directly against the States. The text of the statute explicitly prohibits any State from imposing voting qualifications, practices, and procedures that abridge the right to vote on account of race or color. The language of Section 2 could not be more clear. And that is why the Nixon court, they spent much more than two sentences, but the analysis was pretty straightforward. And if you, and as, if you read the cases where this issue has been It is a straightforward, two-step legal analysis that does not require an exhaustive expression by the court. As the Lewis court made clear, and the Lewis court also, their analysis was not lengthy. It was not necessary to be lengthy. The Lewis court said that Congress clearly intended Section 2 to be enforceable by private action, and Congress clearly intended Section 2 to be enforceable directly against the States. Now, with regard to the second question, also a simple legal analysis. Congress acted pursuant to a valid exercise of power. The Lewis court again said that the Civil War amendments, the 14th and 15th designed as an expansion of Federal power and an intrusion on State sovereign State sovereignty fundamentally altered the balance of State and Federal power struck by the Constitution. Again, this is a constitutional analysis that has been applied repeatedly by the courts with regard to the Voting Rights Act since it was enacted in 1965. And the Lewis court went on to hold that the textual, historical, and jurisprudential justifications for Congress's power to abrogate State sovereign immunity through the Section 5 of the 14th Amendment and Section Amendment apply with equal force and validity to congressional action under Section 2 of the 15th Amendment of the analysis with regard to Alabama's sovereign immunity. Section 2 and Section 5 of the 14th and 15th Amendments are identical, and they give Congress the valid power to exercise its legislative authority in support of the Civil War amendment, its historical context in which the Voting Rights Act was established, make it clear that the district court properly found that the State of Alabama is not immune. Now, Your Honor, you asked some questions about the procedure, what would happen in this case. This case has already happened. The lawsuit, the trial has already occurred. It started on November the 7th. It concluded on November the 19th. From our perspective, any remedy in this case would be moot. Recently, the 11th Circuit ruled in a case, Green v. Graham, that the 11th Amendment is immunity from liability. And the lawsuit here has already occurred. The only thing remaining is that Judge Watkins has not issued any ruling with regard to the liability or non-liability of the State of Alabama. But the 11th Amendment does not provide for immunity from liability. And Green v. Graham makes that distinction very clearly. Judge Pryor identified that the 11th Amendment focuses only on immunity from suit and, moreover, quoted the Supreme Court as saying, denials of sovereign immunity are immediately appealable only because sovereign immunity includes immunity from suit, the value of which is, for the most part, lost as litigation proceeds past motion practice. This case is far past motion practice. We've concluded the trial, and only liability remains, and there is no immunity from liability. The State did not seek a stay. They did not move for an expedited appeal in this case. And so there is a question, I think a real question, as to whether the collateral order rule actually provides jurisdiction for an interlocutory appeal, given now the occurrence of the trial in this case. One more point that I would just like to leave with the Court is that in the reply brief and in the initial brief, the State extended an invitation to the Court to look at whether the results test was constitutional or may be constitutional in some circumstances in the way it may be applied down the road. That is not an issue that is probably before this Court on an interlocutory appeal. The only issue is sovereign immunity. That analysis stops with whether there's a valid exercise of power under the Fourteenth and Fifteenth Amendment. There's no need to look at the results test, and we would respectfully request that the Court not accept the invitation to engage in constitutional speculation that is unnecessary to decide the sovereign immunity. It was a bench trial. The State presented witnesses, cross-examined witnesses. There were approximately 20 witnesses. It went on for multiple days, started on the 7th, ended on the 19th. It has concluded, and we are in post-trial briefing. So that's the status of the case. You acknowledge that this appeal is now moot, right? We believe it is, Your Honor. We believe it's moot. The suit has occurred. So immunity from suit appears to be... I'm not sure what the remedy would be. So we believe it's moot. But we also believe that... Is that right? I'm sorry, Your Honor? Has anyone filed a suggestion of mootness in this case? No, Your Honor. We have not. We have not filed that suggestion. That is one of the reasons that we had moved to postpone the oral argument in this case. But the trial has only recently concluded, and therefore, we have not filed any such pleading. But no stay has been entered, so you would expect that the district court judge will enter a judgment at some point? Yes, Your Honor. Soon, probably. Well, we still have post-trial briefing. And actually, we're still waiting for the trial transcript. So we're hoping that it will be expedited, and we're looking forward to the court's ruling. Thank you, Mr. Harrison. Thank you, Your Honor. Mr. LaCour, you've reserved some time for rebuttal. And I assume you'll start off with the issue of the trial that's occurred? Yes, Your Honor. So, trial did conclude recently. Proceedings in the trial. But we, as my friend on the other side just mentioned, we're still waiting on the trial transcript. Then there will be a period of post-trial briefing. Then there will be closing arguments afterwards. And then we'll be waiting on the court to issue a ruling. It's conceivable there could be a retrial. One doesn't know how long those proceedings could go. Our sovereign immunity and our dignity interests are still harmed as long as we are still forced to appear in a Federal court in that case. Now, once a judgment is entered, that might be a different question. But until then, this is still a live issue. It is in no means moot. Second, Your Honor. Well, let me just ask you about that. So what you're saying is the trial, the evidentiary phase of the trial is concluded, but you've still got post-trial briefing and arguments on the briefing issues to go in the trial. So the trial is still in progress to that extent. Is that where we are? Yes, Your Honor. That's correct. So that's one reason why this case is by no means moot. We are still being forced to appear in Federal jurisdiction in the court of another sovereign, as a sovereign, to respond to a suit by a private party. Why didn't Alabama seek a stay while this appeal was going on? Your Honor, the proceedings had already been ongoing for quite some time while the court was ruling on the motion to dismiss. Our 150-year-old system of judicial elections has been challenged. It's a very important issue for the state. We want some sort of resolution as quickly as possible. So to further state the case would have further prolonged that uncertainty for, again, a very vital issue to the state. However, our sovereign immunity is also very vital, so we do urge this court to reach the issue. We will continue to press it, whether that is in Lewis before an en banc court, whether it's before this court, or whether it's in some other proceeding. So, again, we don't believe the court, that this issue is moot, or this case is moot, and that the court could reach the issue here. Returning to the merits very briefly, I did not hear my friend on the other side really dig into the text of the V.R.A. very closely, and I think that's for good reason. The private cause of action in the V.R.A. doesn't even exist on the face of the statute. It is implied. I think the notion of implied abrogation is a bit of an oxymoron under the Supreme Court's controlling precedent. If the scope of the right of action is not defined in the statute and in the text, it's hard to say that the text makes it unmistakably clear that that right of action should go against a state and abrogate their sovereign immunity. And for all those reasons, we submit the V.R.A. does not provide the perfect competence that the Supreme Court has required before finding an abrogation of sovereign Thank you, Counsel.